Slip Op. 13-94

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| ALCAN FOOD PACKAGING (SHELBYVILLE),<br><br>               Plaintiff,<br><br>          v.<br><br>UNITED STATES,<br><br>               Defendant. | Before: Judith M. Barzilay, Senior Judge<br><br>Court No. 09-00095<br><br>**Public Version** |

## OPINION

[On classification of Flexalcon material, summary judgment granted for Defendant.]

July 25, 2013

*William Randolph Rucker* and *Kathleen M. Murphy,* Drinker Biddle & Reath, LLP, for Plaintiff Alcan Food Packaging (Shelbyville).

*Aimee Lee*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for Defendant United States. With her on the brief were *Stuart F. Delery*, Acting Assistant Attorney General, and *Barbara S. Williams*, Attorney in Charge, International Trade Field Office. Of counsel on the brief was *Paula Smith*, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

      BARZILAY, Senior Judge:  This case is before the court on cross-motions for summary

judgment.  Plaintiff Alcan Food Packaging (Shelbyville) ("Alcan"), challenges the decision of

Defendant U.S. Customs and Border Protection ("Customs") denying Alcan's protests of

Custom's classification of its "Flexalcon" (short for Flexible Aluminum Conserve) packaging

material within the Harmonized Tariff Schedule of the United States ("HTSUS").  Customs

classified the subject merchandise under the provision for "plastics" and rejected Alcan's

proposed classification of the merchandise under the provision for "aluminum foil."  More

specifically, Customs classified the subject merchandise under HTSUS subheading 3921.90.40,

which carries a 4.2% *ad valorem* duty.  Alcan, however, contends that the subject merchandise is

properly classified under HTSUS subheading 7607.20.50, which is duty free.  Alcan filed an

application for further review, which Customs denied in a Ruling Letter. *See* HQ Ruling

H008142 (Nov. 26, 2008).  This matter involves imported merchandise from Germany, entered

through the Ports of Louisville, Blaine, and Detroit between October 2005 and September 2006.

The court has jurisdiction pursuant to 28 U.S.C. § 1581(a).  For the reasons set forth below,

Plaintiff's motion for summary judgment is denied and Defendant's motion is granted.

## I. STANDARD OF REVIEW

The court reviews Customs' protest decisions *de novo.* 28 U.S.C. § 2640(a)(1).  USCIT

Rule 56 permits summary judgment when "there is no genuine dispute as to any material

fact . . . ." USCIT R. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In considering whether material facts are in dispute, the evidence must be considered in a light

most favorable to the non-moving party, drawing all reasonable inferences in its favor, as well as

all doubts over factual issues. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157

(1970); *Anderson,* 477 U.S. at 253-54.

A classification decision involves two steps.  The first addresses the proper meaning of

the relevant tariff provisions, a question of law.  *See Faus Group, Inc. v. United States*, 581 F.3d

1369, 1371-72 (Fed. Cir. 2009) (citing *Orlando Food Corp. v. United States,* 140 F.3d 1437,

1439 (Fed. Cir. 1998)).  The second step determines the nature of the imported merchandise and

is a question of fact. *See id.*  When there is no factual dispute regarding the merchandise, as is the

case here, the resolution of the classification issue turns on the first step, determining the proper

meaning and scope of the relevant tariff provisions. *See Carl Zeiss, Inc. v. United States*, 195

F.3d 1375, 1378 (Fed. Cir. 1999); *Bausch & Lomb, Inc. v. United States,* 148 F.3d 1363, 1365-66

(Fed. Cir. 1998).

    While the court accords deference to Customs' classification rulings relative to their

"power to persuade," *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001) (citing *Skidmore v.*

*Swift & Co.,* 323 U.S. 134, 140 (1944)), the court has "an independent responsibility to decide

the legal issue of the proper meaning and scope of HTSUS terms." *Warner-Lambert Co. v.*

*United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005) (citing *Rocknel Fastener, Inc. v. United*

*States,* 267 F.3d 1354, 1358 (Fed. Cir. 2001)).

## II. UNDISPUTED FACTS

    The following facts are not in dispute.  The subject merchandise is known commercially

as Flexalcon.  It consists of plastic film and aluminum foil.  Flexalcon is produced by laminating

aluminum foil with multiple layers of plastic film.  [[

                                        ]].  Flexalcon is imported on reels as two separate

products (base and lid material).  The base material is formed into a pouch and the lid material

covers the base.  The base and lid materials are designed to form a package that holds food.

Flexalcon packages store and extend the shelf-life of food in the form of ready-to-eat meals.

They are a substitute for conventional preserve packaging such as aluminum cans, steel cans, or

glass jars.

    [[                                        ]] Flexalcon is used by the United States military to

package ready-to-eat meals for soldiers (called "Meals, Ready-to-Eat" or "MREs").  The

remaining imported Flexalcon material is used for packaging the same type of meals for allied

forces.  From World War II until 1980, U.S. Army field rations were supplied as shelf stable

processed foods in metal cans, called "C-rations."  In 1980, the first retort pouch rations (MREs)

were procured by the military and have subsequently been deployed in ground operations around

the world.  *See* Def. Ex. G at 4 n.2 (Dunn Declaration).

Flexalcon has the following components: (1) Polyethylene Terephthalate (PET) film:

provides tensile strength during production, processing, and in the final product.  It also has the

heat resistance properties necessary to withstand the retort and sealing processes.  PET film is a

print carrier film and therefore can accommodate printing; (2) Aluminum Foil: provides the

barrier properties for Flexalcon.  Specifically, it provides an absolute barrier against gas,

moisture, and light.  Aluminum foil enhances the packaging stiffness, provides support, and is

able to withstand the deep drawing process; (3) Polypropylene (PP) film: provides the layer of

film that is used to seal the Flexalcon base and lid materials and form a package.  It has high heat

resistance for the retorting process.  It is the layer of film that comes in direct contact with the

food.  PP film also provides support to the aluminum foil, prevents corrosion of the foil, and

enhances the finished package's stiffness; (4) Oriented Polyamide (OPA) film: provides

durability for the entire laminate structure by increasing the burst strength and improving

piercing and flex-crack/pinhole resistance.  It improves the overall durability and reliability of

the package and therefore reduces production and inspection related costs.  Is also contributes to

the flatness of the laminate by reducing curling; and (5) Oriented Polypropylene (OPP) film:

protects the aluminum foil layer of the base material (pouch) from external abuse and stiffens the

filled pouch.  The materials are laminated [[                                                      ]].

Flexalcon base material has [[      ]] layers: [[      ]] layers of plastic film and [[      ]]

layer of aluminum foil.  From outside to inside, the base material is composed of (1) [[    ]]

microns of oriented polypropylene (plastic), (2) [[    ]] microns of aluminum strip (aluminum

foil), (3) [[    ]] microns of oriented polyamide film (plastic), and (4) [[    ]] microns of

polypropylene film (plastic).  The plastic layers account for [[      ]] of the thickness, [[      ]] of

the weight, and [[      ]] of the value of the material.  The foil layer accounts for [[      ]] of the

thickness, [[      ]] of the weight, and [[      ]] of the value.  Adhesive accounts for the balance.

Some of the base material is made in colored styles (*i.e.*, olive green or sand beige).  [[

                                                                                                                         ]].

Flexalcon lid material has [[      ]] layers: [[      ]] layers of plastic film and [[      ]] layer

of aluminum foil.  From outside to inside, the lid material is composed of (1) [[    ]] microns of

polyethylene terephthalate film (plastic), (2) [[    ]] microns of aluminum strip (aluminum foil),

and (3) [[    ]] microns of polypropylene film (plastic).  The plastic layers account for [[      ]] of

the thickness, [[      ]] of the weight, and [[      ]] of the value of the material.  The foil layer

accounts for [[      ]] of the thickness, [[      ]] of the weight, and [[      ]] of the value of the lid.

Some of the lid material is made in the same colored styles.  [[

                                                                                                                         ]].

After the food is placed inside the base material, the base and lid material are

hermetically[1] sealed to form a package.  The seal is formed by applying pressure with heated

bars to melt the PP layers together.  The sealed package then undergoes a retorting process,

---

[1] A hermetic seal is defined as "a seal that is impervious to air and other fluids." Academic Press,
Dictionary of Science and Technology at 1015 (1992).

which is a method of heat sterilization (250 degrees for approximately 45-60 minutes).  It

destroys any impurities that may exist in the food.  The sealed package prevents light, water

vapor, oxygen, microorganisms, mold, yeast, odor, and insects from reaching the food contents.

It also prevents the loss of aroma, vitamins, liquid, fat, and carbon dioxide/nitrogen.  It therefore

protects and preserves the contents inside the package safely over a long shelf-life (three years)

with no refrigeration.  The aluminum foil provides barrier properties that give MREs a three-year

shelf-life.  Although the plastic layers provide some barrier properties, they allow oxygen

migration and therefore cannot provide the same barrier properties as aluminum foil.  The plastic

layers, however, do provide specific support functions for the aluminum foil by (1) improving

deep drawing formability, which refers to the extent to which the material can be drawn or

stretched to form a pocket in the base material; (2) improving piercing and pinhole strength; (3)

improving flex-crack resistance; (4) protecting the foil from environmental influences; (5)

improving overall package durability; and (6) providing a seal for the package.

### III. DISCUSSION

The "General Rules of Interpretation ("GRIs")" govern classification of merchandise

under the HTSUS, and are applied in numerical order." *Honda of Am. Mfg. v. United States*, 607

F.3d 771, 773 (Fed. Cir. 2010) (internal quotations and citations omitted).  "What is clear from

the legislative history of the World Customs Organization ("WCO") and case law is that GRI 1 is

paramount." *Telebrands Corp. v. United States*, 36 CIT __, __, 865 F. Supp. 2d 1277, 1280

(2012).  When determining the correct classification for merchandise, a court first construes the

language of the headings in question, in light of any related section or chapter notes. *See* GRI 1;

*Faus Grp., Inc.*, 581 F.3d at 1372 (citing *Orlando Food Corp.*, 140 F.3d at 1440).  Similarly,

GRI 6 states that "classification of goods in the subheadings of a heading shall be determined

according to the terms of those subheadings and any related notes and, *mutatis mutandis*, to the

above rules." GRI 6.  The "terms of the HTSUS are construed according to their common

commercial meanings." *Millenium Lumber Distrib. Ltd. v. United States*, 558 F.3d 1326, 1329

(Fed. Cir. 2009).  To ascertain the common commercial meaning of a tariff term, the court "may

rely on its own understanding of the term as well as lexicographic and scientific

authorities." *Len-Ron Mfg. Co. v. United States,* 334 F.3d 1304, 1309 (Fed. Cir. 2003).  The

court may also refer to the Harmonized Description and Coding System's Explanatory Notes

("Explanatory Notes") "accompanying a tariff subheading, which–although not controlling–

provide interpretive guidance." *E.T. Horn Co. v. United States,* 367 F.3d 1326, 1329 (Fed. Cir.

2004) (citing *Len-Ron,* 334 F.3d at 1309).

The dispute in this case concerns whether Flexalcon is properly classified as plastic film

under HTSUS subheading 3921.90.40 or aluminum foil under the HTSUS subheading

7607.20.50.  The applicable tariff provisions provide:

> 3921 Other plates, sheets, film, foil and strip, of plastics:
> 3921.90 Other:
> 3921.90.40 Flexible . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.2%
>
>                                      *       *       *
>
> 7607 Aluminum foil (whether or not printed, or backed with paper, paperboard, plastics
> or similar backing materials) of a thickness (excluding any backing) not exceeding
> 0.2mm:
> 7607.20 Backed:
> 7607.20.50 Other . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Free

HTSUS subheadings 3921.90.40, 7607.20.50.  The subheadings are *eo nomine* provisions, or

more simply, provisions "that describe[] an article by a specific name, not by use." *Aromont USA,*

*Inc. v. United States*, 671 F.3d 1310, 1312 (Fed. Cir. 2012) (citing *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011)).  Absent limiting language or contrary legislative intent, an *eo nomine* provision covers all forms of the named article.  *Nidec Corp. v. United States*, 68 F.3d 1333, 1336 (Fed. Cir. 1995).

Plaintiff argues that Flexalcon is properly classified as "backed aluminum foil" under HTSUS subheading 7607.20.50.  Plaintiff claims that plastic-aluminum foil laminations are provided for under Heading 7607. Pl. Br. 16.  More specifically, Plaintiff argues that Flexalcon should be classified using an "essential character" analysis under GRI 1. Pl. Br. 10.  Plaintiff suggests that the court should focus its essential character analysis "primarily on comparing each component of Flexalcon as it relates to the use and function of this product," rather than comparing the relative "thickness, weight, and value" of the component materials.  Pl. Br. 11.  Plaintiff claims that the "primary and indispensable function of the Flexalcon material is to provide an extended shelf-life to packaged foods." Pl. Br. 12.  Plaintiff then observes that it is the aluminum foil, rather than the plastic film, that gives Flexalcon its extended shelf-life (*i.e.*, its essential character), thereby justifying classification under HTSUS subheading 7607.20.50. Pl. Br. 11-16; Pl. Resp. Br. 1, 5-12.

Customs, however, maintains that Flexalcon is properly classified as "flexible plastic film" under HTSUS subheading 3921.90.40.  Customs contends that proper classification of the subject merchandise can be accomplished through a routine application of GRI 1 and does not require an "essential character" analysis. Def. Br. 9-16.  More specifically, Customs argues that the "presence of a thin aluminum layer in the Flexalcon material does not preclude classification under . . . Heading 3921 [because the tariff provision] covers sheets or films of plastics combined

with other materials including metal (*i.e.*, aluminum) foil.  Examining Heading 3921 in the

context of the surrounding tariff headings, demonstrates that 'other' plates, sheets, film, foil and

strip of plastics include the combination of plastics and metal." Def. Br. 10.  Customs also argues

that the Explanatory Notes to Heading 3921 support its classification of Flexalcon because the

tariff provision covers "cellular products or *those which have been reinforced, laminated,*

*supported or similarly combined with other materials*." Def. Br. 11 (quoting Explanatory Notes

to Heading 3921) (emphasis in original).  Customs claims that the Explanatory Notes to Chapter

39 are even more compelling because they provide for "*Plates, sheets, etc., of plastics, separated*

*by a layer of another material such metal foil*, paper, paperboard."  Def. Br. 12 (quoting

Explanatory Notes to Chapter 39) (emphasis in original).  Alternatively, Customs argues that

even if an "essential character" analysis is appropriate, the majority of factors suggest that

Flexalcon has the essential character of plastic, not aluminum foil. Def. Br. 16.  Customs claims

that the primary function of Flexalcon is to serve as a package for holding food, something that

can only be accomplished by sealing the PP layers of the base and lid materials. Def. Br. 19-22.

    The court will begin by defining the applicable tariff terms and then consider the proper

classification of the subject merchandise.  The court will first consider HTSUS Heading 3921

and then move to HTSUS Heading 7607.

### A.  Definition of Plastic Film Under Heading 3921

    The "expression plastics means those materials of headings 39.01 to 39.14 which are or

have been capable, either at the moment of polymerization or at some subsequent stage, of being

formed under external influence (usually heat and pressure, if necessary with a solvent or

plasticizer) by molding, casting, extruding, rolling or other process into shapes which are

retained on the removal of the external influence."  Notes to Chapter 39, Note 1.  Plastic film "is

made from polyvinyl chloride, polyethylene, polypropylene, polystyrene, Mylar, and other

resins; used for wrapping, sealing, garment waterproofing, and coating wood, paper, or fabric."

McGraw Hill Dictionary of Scientific and Technical Terms at 1613 (2003).

Heading 3921 covers "Other plates, sheets, film, foil and strip, of plastics."  Given that

the heading refers to "<u>other</u> plates, sheets, etc.," it should be read together with the preceding

headings that cover similar products.  For example, Heading 3918  covers "Floor coverings of

plastics; . . . wall and ceiling coverings of plastics"; Heading 3919 covers "Self-adhesive plates,

sheets, film, foil, tape, strip and other flat shapes, of plastics"; and Heading 3920 covers "Other

plates, sheets, film, foil and strip, of plastics, noncellular and not reinforced, laminated,

supported or similarly combined with other materials."  HTSUS Headings 3918, 3919, and 3920.

Heading 3920 is very similar to Heading 3921.  The former <u>excludes</u> plastic film that has been

"reinforced, laminated, supported or similarly combined" and the latter <u>includes</u> plastic film that

has been combined with other materials.  Therefore, Heading 3921 covers composite products

that would be excluded under Heading 3920.

Note 10 of Chapter 39 provides:

> In headings 3920 and 3921, the expression "<u>plates, sheets, film, foil and strip</u>"
> applies only to *plates, sheets, film, foil and strip (other than those of chapter 54)*
> and to *blocks of regular geometric shape*, whether or not printed or otherwise
> surface-worked, uncut or cut into rectangles (including squares) *but not further
> worked* (even if when so cut they become articles ready for use).

Notes to Chapter 39, Note 10 (emphasis added).  With regard to Note 10, the parties dispute

whether the term "but not further worked" modifies both preceding clauses ("plates, sheets, film,

foil and strip" and "blocks of regular geometric shape") or just the immediately preceding clause

("blocks of regular geometric shape").  Customs argues, albeit in an exhibit, that the modifier *but not further worked* applies only to the immediately preceding clause. Pl.'s Br. Ex. 26 ¶ 7(a); HQ Ruling H008142.  Plaintiff, however, argues that the modifier *but not further worked* applies to both preceding clauses. Pl. Br. 20-21.

The last antecedent rule provides that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003).  In this case, though, the limiting clause that begins with "whether or not " is separated from the preceding clause with a comma.  With the comma, the limiting clause that begins with "whether or not"—which includes the modifier *but not further worked*—can be applied to Note 10 generally and therefore modifies both preceding clauses. *See, e.g.*, Antonin Scalia & Bryan A. Garner, Reading Law: the Interpretation of Legal Texts 161 (2012).  In past cases, moreover, Customs has construed the limiting language in Note 10 as reaching back to the first clause. *See* HQ Ruling 967463at 4 (Feb. 10, 2005) ("Note 10 to Chapter 39, HTSUSA, states, in relevant part, that the expression 'plates, sheets, film, foil and strip' in heading 3921 . . . includes plates, sheets, film, foil and strip *whether or not printed or otherwise surface worked, uncut or cut into rectangles, but not further worked*.") (emphasis in original); HQ Ruling 966944 (Oct. 22, 2004) ("Note 10 to Chapter 39, HTSUS, includes film whether or not surface worked but not further worked."); HQ Ruling N013255 (July 19, 2007) ("The perforation is considered to be a further working of the sheet that excludes it from classification in heading 3920.").  In the HQ Ruling for this case, however, Customs changed its position but did not reconcile its views or cite any authority that might justify some level of deference. *See* HQ Ruling H008142.  The

court therefore construes the limiting language in Note 10 as applying to both preceding clauses.

The net effect is that Heading 3921 does not cover plastic film that has been "further worked."

The Explanatory Notes provide further guidance on the scope of Chapter 39. They

specifically address plastics that have been combined with other materials:

> This Chapter also covers the following products, whether they have been obtained by a single operation or by a number of successive operations **provided** that they retain the *essential character* of articles of plastics:
> . . . .
> (b)     Plates, sheets, etc., of plastics, separated by a layer of another material such as metal foil, paper, paperboard.

Explanatory Notes to Chapter 39 at VII-39-13 (2012) (bold in original) (emphasis added). This

language suggests that an "essential character" analysis may be necessary to determine whether

certain products are properly classifiable as plastics. The Explanatory Notes for Heading 39.21

state:

> This heading covers plates, sheets, film, foil and strip, of plastics, **other than** those of **heading 39.18, 39.19 or 39.20** or of **Chapter 54**. It therefore covers only cellular[2] products or those which have been reinforced, laminated, supported or similarly combined with other materials.

 at VII-3921-1 (bold in original). Together, the Explanatory Notes specifically reference plastic

film that incorporates a layer of "metal foil" and plastic film that has been "laminated" with other

materials. Plastic film that has these characteristics is classifiable under Heading 3921, which

---

[2] "Cellular plastics are plastics having many cells (either open, closed or both), dispersed throughout their mass. They include foam plastics, expanded plastics and microporous or microcellular plastics. They may be either flexible or rigid." Explanatory Notes to Chapter 39 at VII-39-12.

follows logically from Heading 3920, which excludes plastic film that has been "reinforced, laminated, supported or similarly combined with other materials."  HTSUS Heading 3920.

Under Heading 3921, therefore, plastic film whether or not printed or otherwise surface-worked, uncut or cut into rectangles (including squares) but not further worked (even if when so cut they become articles ready for use), includes (1) plastic products that are separated by a layer of another material such as metal foil, paper, paperboard; and (2) plastic products that have been reinforced, laminated, supported or similarly combined with other materials, provided they retain their essential character as articles of plastics.  At the subheading level, subheading 3921.90.40 covers "flexible" plastic film or plastic film that is "capable of being flexed." *See* Webster's Third New International Dictionary at 869 (1993).

### B. Definition of Aluminum Foil Under Heading 7607

Aluminum "is a bluish-white metal characterized by its lightness.  It is very ductile and easily rolled, drawn, forged, stamped, and may be case, etc.  Like other soft metals, aluminum is also very suitable for extrusion and die-casting."  General Explanatory Notes to Chapter 76 at XV-76-3 (2012).  Aluminum foil is a "thin aluminum sheet, widely used as a food wrapping, cooking sheet, and insulation backing."  Academic Press of Science and Technology at 87 (1992). It is "often backed with paper, paperboard, plastics or similar backing materials, either for convenience of handling or transport, or in order to facilitate subsequent treatment, etc." Explanatory Notes to Heading 74.10 at XV-7410-1 (2012) (Explanatory Note to Heading 74.10 (copper foil) applies *mutatis mutandis* to Heading 76.07).

Heading 7607 covers "Aluminum foil (whether or not printed, or backed with paper,

paperboard, plastics or similar backing materials) of a thickness (excluding any backing) not

exceeding 0.2mm."  Note 1(d) of Chapter 76 defines the scope of Heading 7607:

> Headings 7606 and 7607 apply, . . . to plates, sheets, strip and foil with patterns (for example, grooves, ribs, checkers, tears, buttons, lozenges) and to such products which have been perforated, corrugated, polished or coated, provided that they do not thereby *assume the character* of articles or products of other headings.

Notes to Chapter 76, Note 1(d) (emphasis added).  Note 1(d) also indicates that an "essential

character" analysis may be appropriate to determine whether certain products are properly

classifiable as aluminum foil.

The General Explanatory Notes to Chapter 76 provide:

> Products and articles of aluminum are frequently subjected to various treatments to improve the properties or appearance of the metal, to protect it from corrosion, etc.  These treatments are generally those referred to at the end of the General Explanatory Note to Chapter 72, and do not affect the classification of the goods.

General Explanatory Notes to Chapter 76 at XV-76-4 (2012) (emphasis added).  In turn, the

General Explanatory Notes to Chapter 72 provide:

> (C) **Subsequent manufacture and finishing**
> The finished products may be subjected to further finishing treatments or converted into other articles by a series of operations such as:
> > ….
> > (2) **Surface treatments** or other operations, . . . , to improve the properties or appearance of the metal, protect it against rusting and corrosion, etc. Except as otherwise provided in the text of certain headings, such treatments do not affect the heading in which the goods are classified. They include:
> > > ….
> > > (d) Surface finishing treatment, including:
> > > > ….
> > > > (v) coating with non-metallic substances, e.g., … coating with ceramics or plastics[.]

    ….
     (g) Lamination[.]

General Explanatory Notes to Chapter 72 at XV-72-10, -11 (bold in original).  The Explanatory

Notes to Chapter 72 mention "lamination" as a type of surface finishing treatment that would

also apply to Chapter 76.  This would expand the scope of the Heading 7607 to include foil

products that have been perforated, corrugated, polished or coated, and laminated.

   Under Heading 7607, therefore, aluminum foil (whether or not printed, or backed with

paper, paperboard, plastics or similar backing materials) of a thickness (excluding any backing)

not exceeding 0.2mm, include products which have been surface treated (*i.e.*, polished, coated, or

laminated), provided that they do not thereby assume the character of articles or products of

other headings.  At the subheading level, subheading 7607.20.50 provides for "backed"

aluminum foil and then further divides the subheading to cover "other" backed aluminum foil.

*See* HTSUS Subheading 7607.20.50.  The HTSUS does not define the term "backed."  The term

is generally described as foil products that have been combined with "paper, paperboard, plastics

or similar backing materials, either for convenience of handling or transport, or in order to

facilitate subsequent treatment, etc."  Explanatory Notes to Heading 74.10 at XV-7410-1.  The

parties dispute whether the term "backed" is limited to aluminum foil products that have been

reinforced (backed) with another material on one-side only or can include aluminum foil

products that have been reinforced on both sides. Pl. Br. 22; Def. Br. 26.  As discussed in the

next section, it is not necessary to decide this issue because the court has determined that

Heading 7607 does not cover this particular product.

## C. Classification of the Subject Merchandise

Flexalcon is a composite product made of aluminum foil and various types of plastic film. A GRI 3(b) analysis is often applied to resolve classification disputes involving composite goods but here it is not necessary because both tariff provisions contemplate goods that have been combined with other materials. *See 3G Mermet Fabric Corp. v. United States*, 25 CIT 174, 176, 135 F. Supp. 2d 151, 154-55 (2001). Flexalcon satisfies the definition of "plastic film" under HTSUS Heading 3921. It is undisputed that Flexalcon base and lid materials contain [[          ]] layers of cellular plastic film combined with a [[        ]] layer of aluminum foil. As defined by the court, Heading 3921 provides for this type of product. The Explanatory Notes specifically state that Chapter 39 covers "[p]lates, sheets, etc., of plastics, separated by a layer of another material such as metal foil, . . . ." Explanatory Notes to Chapter 39. The Explanatory Note to Heading 3921 borrows language from Heading 3920 to describe the type of composite materials provided for under Heading 3921. It states that Heading 3921 "covers only cellular products or those which have been reinforced, laminated, supported or similarly combined with other materials." *See* Explanatory Note to Heading 39.21; *see also* HTSUS Heading 3920. The Explanatory Notes, therefore, provide a good deal of specificity on the scope of Heading 3921. They indicate that Heading 3921 covers plastic film laminates "separated by a layer of another material such as metal foil," which describes Flexalcon fairly well. Flexalcon base and lid material can reasonably be described as plastic film separated by a layer of aluminum foil. As for the proper subheading, there is no dispute that Flexalcon is flexible. Flexalcon, therefore, is classifiable as flexible plastic film under HTSUS subheading 3921.90.40.

Moreover, the aluminum foil layer does not change the "essential character" of Flexalcon from an article of plastic under Heading 3921 to an article of aluminum foil under Heading 7607. *See* Explanatory Notes to Chapter 39 at VII-39-13. An essential character test is a fact intensive analysis. *See, e.g., Arko Foods Intern., Inc. v. United States*, 654 F.3d 1361, 1365 (Fed. Cir. 2011). The GRI's do not define "essential character" but the Explanatory Note to GRI 3(b) states that "the goods are to be classified as if they consisted of the material or component **which gives them their essential character**, insofar as this criterion is applicable." Explanatory Notes to GRI 3(b) at GIR-5 (2012) (bold in original). The "factor which determines essential character will vary as between different kinds of goods" and "may, for example, be determined by the nature of the material or component, its bulk, quantity, weight or value, or by the role of a constituent material in relation to the use of the goods." *Id.* In making this determination, the Court will consider whether the component part (plastic film or aluminum foil) imparts qualities that are "indispensable" to the functioning of the subject merchandise. 3*G Mermet Fabric Corp.*, 135 F. Supp. 2d at 158-159 (citing *Better Home Plastics Corp. v. United States*, 20 CIT 221, 227, 916 F. Supp. 1265, 1269 (1996), *aff'd* 119 F.3d 969 (Fed. Cir. 1997)).

In this case, the plastic layers predominate in terms of "bulk, quantity, weight or value." More specifically, the plastic film outweighs aluminum foil in terms of quantity (base material: [[    ]] plastic to aluminum foil layers, lid material:[[    ]] plastic to aluminum foil), bulk (base material thickness: plastic film [[      ]], aluminum [[      ]]; lid material thickness: plastic film [[    ]], aluminum foil [[      ]]), weight (base material: even split of [[      ]] for both plastic and aluminum foil; lid material: [[      ]] of weight is plastic film, [[      ]] aluminum foil), and value (base material: [[      ]] of cost attributable to plastic, [[      ]] to aluminum foil; lid

material: [[      ]] of cost attributable to plastic, [[      ]] to aluminum foil).   In addition, the court

considers the "role of a constituent material in relation to the use of the goods."  Explanatory

Notes to GRI 3(b).  This part of the essential character test implicates use.  Although undertaking

a use analysis to classify merchandise provided for *eo nomine* is inappropriate unless the tariff

provision "itself inherently suggests a type of use," *Carl Zeiss, Inc.*, 195 F.3d at 1379, the

Explanatory Notes expressly mention that an "essential character" inquiry may be necessary to

classify plastic-aluminum foil composites like Flexalcon.  Part of that inquiry involves looking at

the relationship between the constituent materials and how the product is used.

Here, both materials (plastic film and aluminum foil) are indispensable to the functioning

of Flexalcon.  The subject merchandise is used to package ready-to-eat-meals for the military.

The plastic film and aluminum foil play critical roles in making Flexalcon a viable material to

package military meals.  There is no dispute that the aluminum foil imparts barrier properties that

give MREs a three-year shelf life. *See* Pl. Ex. 22 at 389 (Fundamentals of Packaging

Technology) ("Of the flexible packaging materials, only intact aluminum foil is potentially a

100% barrier to all gases.").  This three-year threshold is a requirement.  *See* Pl. Ex. 15[3] at 1

(Letter from U.S. Dep't of Defense) ("From a barrier standpoint, the most critical component of

the flexible packaging is the aluminum layer because of its inherent barrier properties."); Def. Ex.

A at 5 (Defendant's First Interrogatories and Requests for Production) ("Flexalcon is used by

U.S. Army to package [MREs], which have stringent shelf life requirements (*i.e.*, 3 years at 85°

F)."); Pl. Ex. 8 at 155 (Wagner Deposition) ("Is it possible to make a package that would meet

_____

[3] The court disagrees with Defendant's characterization of this exhibit as hearsay.

the military specifications with just plastic materials in this case? . . . It would meet all of the

specifications except the three-year shelf life because there's no barrier.").  Although some of the

plastic film layers also provide barrier properties, they cannot (individually or together) satisfy

the three-year shelf life requirement without the aluminum foil. *See* Pl. Ex. 6 at 97 (Dietrich

Deposition) ("If you just take the aluminum out and make a package just of out the plastics, you

will end up in a shelf life of two to four weeks. And if you put the aluminum in you will end up

in a shelf life of three to five years.").  Compared to other barrier materials, aluminum foil also

imparts the ability to form a three-dimensional package that conforms to the food contents. *See*

Pl. Ex. 15 at 2.  Therefore, aluminum foil is indispensable to the functioning of Flexalcon.

Likewise, it is also undisputed that the plastic film layers impart properties that allow the

meals to be packaged (contained) in a soft pouch rather than a metal can. *See* Pl. Ex. 6 at 33

("Prior to the development of Flexalcon, what was being used? . . . Cans.").  Considering the

package's ability to withstand the retorting process, flex-crack and puncture resistance, deep

drawing capability, hermetic sealing, and just overall durability, the plastic film layers provide

the key ingredients that permit ready-to-eat meals to be sold in the form of soft, flexible

packages.  *See* Def. Ex. G at 7 (Dunn Expert Report) ("Plastic in Flexalcon, as a result of its

inherently formable, shapeable nature, is tough and durable. It seals the pouch closed, protects its

contents, and creates a high performance packaging material."); Def. Ex. J (Sherman PPT); Pl.

Ex. 3 (Retort Training PPT); *see also* Def. Ex. C at 2 (Military Specification) ("This

specification covers the performance criteria for packaging materials and the packaging of food

in flexible pouches to include the filling and hermetic sealing of the pouches, the thermal

processing of the filled and sealed pouches for commercial sterility. . . .").  Aluminum foil, by

itself, is not durable enough to serve as a packaging material for MREs. *See* Pl. Ex. 22 at 389

("In the thinner gauges used for most packaging, . . . foils suffer from pinholing—minute holes

through the foil.  Furthermore, foil is not durable to repeated flexing and can develop flex-cracks

during machining and shipping."); Def. Ex. G at 7 ("By itself, aluminum foil is fragile; it does

not and cannot serve as a package.").  Therefore, the features just described indicate that the

plastic film is also indispensable to the functioning of Flexalcon.

      Although both materials are indispensable based on functionality, it is the plastic

elements that give Flexalcon packages their strength and flexibility.  The plastic layers impart

qualities that define Flexalcon as a flexible food packaging solution for the military.  Both

aluminum foil and plastic are critical but the plastic layers provide the constituent materials that

permit military field rations to be distributed in the form of soft, lightweight packages.

Flexalcon packages have very different and advanced characteristics from the old C-rations—

they are light, flexible, easier to transport—and this advancement is made possible by the

properties imparted by the plastic film.  In addition, the plastic layers outweigh the aluminum

foil under the traditional measures of "essential character."  In the court's view, Flexalcon does

retain the essential character of plastic and does not assume the character of aluminum foil. *See*

Explanatory Notes to Chapter 39 at VII-39-13.

      Alcan, however, claims that Flexalcon is not classifiable under Heading 3921 because it

has been "further worked." Pl. Br. 19; *see* Note 10 to Chapter 39.  This argument is not

persuasive.  The Federal Circuit has defined the term "further worked" as to "form, fashion, or

shape an existing product to a greater extent." *Cummins Inc. v. United States*, 454 F.3d 1361,

1365 (Fed. Cir. 2006) ("*Cummins*") (quoting *Winter-Wolff, Inc. v. United States*, 22 CIT 70, 78,

996 F. Supp. 1258, 1265 (1998) ("*Winter-Wolf*")).  Although this provides a general definition of

the term "further worked," it does not address the term within the context of Heading 3921 or,

more specifically, whether plastic film that has been laminated to aluminum foil constitutes a

further working under Heading 3921.  The court is not persuaded that it does.  The most obvious

problem with this interpretation is that it is inconsistent with the Explanatory Notes, which

specifically provide for plastic film products that have been laminated with other materials. *See*

Explanatory Notes to Chapter 39 & Heading 39.21.  If plastic film that has been laminated to

another material constitutes "further worked," then the Explanatory Notes are incorrect, and

laminations are excluded from Heading 3921.  This seems unlikely.

Even without this inconsistency, the term "further worked" does not apply to the subject

merchandise.  In *Cummins*, for example, the subject merchandise (crankshafts) was "forged and

then trimmed, coined, shot blasted, milled, and mass centered," which satisfied the definition of

"further worked."  *Id.* at 1365.  The court concluded that the crankshafts had been "further

worked beyond being roughly shaped by forging."  *Id.*  In *Winter-Wolf*, the subject merchandise

(aluminum foil) underwent a laser treatment that "rounded" the edge of the foil.  *Winter-Wolf*,

996 F. Supp. 2d at 1265.  The court concluded that the aluminum foil had been further worked

because the laser treatment "deformed" the edge of the foil. *Id*. at 1266.  Here, the plastic film

has not undergone the same type of processing, shaping, or forming.  There is no indication that

it is physically altered as described in *Cummins* or *Winter-Wolf*.   The lamination process does

not shape, form, round, or otherwise alter the physical properties of the plastic film.  Accordingly,

Flexalcon has not been "further worked" and may therefore be classified under HTSUS

subheading 3921.90.40.

Contrary to Alcan's proposed classification, Flexalcon is not classifiable under HTSUS

Heading 7607.  The aluminum foil represents just [[      ]] layer among several in the engineered

laminated product.  The foil is effectively sandwiched between [[      ]] layers of plastic film in

the lid material and [[      ]] layers in the base material. *See* Pl. Ex. 1 at 6-7 (Pl.'s Resp. to Def.'s

Interrogatories) (providing illustration of Flexalcon layers).  The plastic layers give the product

additional properties (both in terms of physical characteristics and functioning) that aluminum

foil does not possess.  There is no question that the foil is important to the functioning of the

product as food packaging, but it does not characterize the whole such that the whole could be

properly described as aluminum foil.  This product has so many layers other than the foil layer,

and so many properties beyond that of aluminum foil, that the heading term "aluminum foil

(whether or not . . . backed with . . . plastics . . .)" cannot be said to encompass Flexalcon.

Although Heading 7607 provides for aluminum foil products that have been coated,

laminated, and backed with other materials, the court is not persuaded that these aluminum foil

composites cover the subject merchandise.  For example, the Explanatory Notes, by reference to

Chapter 72, mention "lamination" as a type of "surface treatment" but in this case Flexalcon

undergoes a lamination process that is distinguishable from a finishing treatment "to improve the

properties or appearance of the metal, protect it against rusting and corrosion, etc." General

Explanatory Notes to Chapter 76 at XV-76-4.  The plastic layers in Flexalcon cannot be

described as a surface treatment to aluminum foil.  Specifically, plastic film is the dominant

input in Flexalcon and provides the essential features that permit Flexalcon base and lid material

to be formed into a strong, flexible package.  That is not a surface treatment as described by

Explanatory Notes.  Alcan also argues that Flexalcon fits the description of "backed" aluminum

foil under subheading 7607.20.50.  Pl. Br. 22.  But "backed" aluminum foil must still have the

characteristics of aluminum foil.  The court has determined that Flexalcon retains the essential

character of plastic and does not assume the character of aluminum foil.  Therefore, Heading

7607 is not the appropriate tariff provision for this product, which also includes "backed"

aluminum foil under subheading 7607.20.50.  The subject merchandise is properly classified

under HTSUS subheading 3921.90.40 (flexible plastic film).

### IV. CONCLUSION

For the foregoing reasons, summary judgment is granted in favor of Defendant.

Judgment will be entered accordingly.


Dated:   July 25, 2013                                              /s/ Judith M. Barzilay
             New York, NY                                    Judith M. Barzilay, Senior Judge